Butler *vs.* The Mayor, etc., of Thomasville *et al.* .

---

BUTLER *vs.* THE MAYOR, ETC., OF THOMASVILLE *et al.*

1. When a municipal corporation is proceeding to lay sewers and discharge filthy sewage upon the land of a property owner, which may probably cause injury to his health and sickness in his family, and where the nuisance is continuing and likely to be permanent, and the consequences are not barely possible, but to a reasonable degree certain, a court of equity may interfere to arrest such nuisance before it is completed.

(*a.*) If a nuisance causes special damage to an individual in which the public do not participate, such special damage gives a right of action; and as an action may be brought for every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction, so as to do full and complete justice between the parties, and terminate the litigation.

(*b.*) Especially will this be done where, as in the case of municipal authorities, the party who seeks to create the nuisance is the only tribunal which has the power to abate it.

(*c.*) This case differs from that of *Powell vs. Foster*, 59 *Ga.*, 790.

(*d.*) The damages likely to result to the complainant in this case by reason of the nuisance are irreparable.

2. There is no power or authority vested in the city of Thomasville, authorizing it to enter upon or take the land of a citizen for the purpose of digging or laying a sewer thereon, by its charter or other act of the legislature; nor is any mode prescribed for the condemnation of such property for public use; and without an express grant of such power, a municipal corporation cannot exercise it.

(*a.*) To justify the authority claimed by the city in this case, there would have to be a necessity for the taking and the payment of just and adequate compensation before taking.

March 30, 1885.

Municipal    Corporations.    Sewers.    Nuisance.    Dam-

ages. Injunction. Eminent Domain. Constitutional Law. Thomasville. Before Judge HANSELL. Thomas County. At Chambers. February 5, 1885.

Butler filed his bill to enjoin the municipal authorities of Thomasville from laying a sewer, from which it was proposed to discharge and empty into a branch on his land the sewage of two large hotels and other buildings. He alleged that, upon hearing that the city proposed to lay such sewer and to make it the principal or main sewer for the city, he at once went before the mayor and council in meeting assembled, and by attorney and personally made known his objections to the laying of the sewer through his lands and the discharge of sewage into the branch thereon; that, notwithstanding his objections so made, and without any offer of compensation to him, the defendant was proceeding to lay the sewer through his land, intending to empty it as aforesaid; that for twenty years his family and stock have used the waters of the branch, the same having heretofore been pure, and the execution by the city of its wrongful and illegal purpose would pollute the waters and make them unfit for use by man or beast, and thus inflict upon him irreparable injury; that his residence was near and immediately west of the proposed lower terminus of the sewer, and the wind frequently blew steadily for days and weeks at a time from the east, and would carry to his residence from the discharge of the sewer noxious vapors and horrible odors that would greatly endanger the life and health of his family; that the land through which it was proposed to lay the sewer was within the corporate limits of the city and was valuable for building lots; that he had desired and intended to divide it into such lots and sell them, expecting to realize therefrom satisfactory prices; but that the laying of such sewer would render the land unfit for building purposes and destroy its value, leaving him without remedy for the injury sustained.

On presentation of this bill, the chancellor granted an order restraining the defendants from prosecuting the work on the land of complainant until further order.

At the hearing, complainant amended his bill, alleging that, notwithstanding service of it, and the restraining order, the defendants had prosecuted to completion the main sewer, and that connection of this with sewers from the hotels and other buildings was all that remained to be done to establish the nuisance sought to be enjoined; wherefore he prayed that the defendants be enjoined from permitting any connections to be made with the main sewer.

The answer of defendants admitted the allegations of the bill as to ownership of land, locations and their purpose to lay the sewer, notwithstanding the objections and protests of complainant. It averred that the contract for laying the sewer was made before objection of complainant was known; that the objections were respectfully heard and patiently considered, and the complainant was then notified that they would proceed with the work as contemplated; that defendants were constrained to a determination to prosecute the work of laying the sewer by considerations of official duty; that the utmost care had been exercised in selecting a route and outlet for it; that the removal of filth from the city had become a necessity, and the means selected for this purpose were the most economical and efficacious, as shown by the opinions of experts and the results of surveys; that in laying the sewer, only suitable material had been used and only skillful labor employed; that the branch into which the sewer emptied was a constantly running stream and emptied into the Ochlocknee river three and a half miles from the city, and that the dangers apprehended by complainant were purely imaginary; that defendants had assured complainant that if the use of the sewer should become, in any manner, a nuisance, it would be extended through and beyond his field, but he would not consent to anything except an ex-

tension to the river, which was impracticable because of its enormous cost; that it was not supposed that complainant would ask or receive compensation for an entry on his land to lay the sewer until the filing of his bill, and then a councilman was appointed to ascertain what, if anything, should be paid him, but he refused to negotiate. The answer further denied any violation of the restraining order, and averred that the laying of the sewer on complainant's land was completed before service of the order, and that the hotel sewer was laid before the amended bill was filed; and that respondents have no power to prevent any citizen from availing himself of the great benefits afforded by connection with this main sewer.

Various affidavits were read, on the hearing, in support of the bill, amended bill and answer, but they are not material here.

The injunction was refused, and complainant excepted and made the following assignments of error:

(1.) The chancellor erred in deciding that casting the sewage from a hotel on the land of complainant would not be a nuisance.

(2.) In deciding that the emptying of the sewer into the water of the branch on the land and running through the land of complainant would not be a nuisance.

(3.) In deciding that the use of the sewer and the daily throwing of the sewage upon the land of complainant would not be a continuing and constantly recurring nuisance.

(4.) In holding that the defendants had a legal right to establish a nuisance upon the land of complainant

(5.) In holding that the defendants could enter upon the land of complainant and take it for public use, without just and adequate compensation being first paid, over objection of complainant.

(6.) In holding that, after the construction of the sewer upon the land and emptying it thereupon, the use of the

sewer daily would not be a continuous and constantly recurring trespass.

(7.) In deciding that the injury or damage·done by constructing the sewer and the daily and continuous use of it and casting the sewage upon the land and in the branch would not be irreparable.

(8.) In holding that the avoidance of circuity and multiplicity of actions would not authorize a court of equity to enjoin a trespass

(9.) The judgment was contrary to law, equity, evidence and the constitutions of Georgia and the United States.

MacIntyre & MacIntyre, by Harrison & Peeples, fo plaintiff in error.

W. M. Hammond; Chas. P. Hansell, by brief, for defendants.

Blandford. Justice.

1. We think the allegations in the bill and the admissions in the answer make a case of nuisance. The discharge of filthy sewage upon the land of another, which may probably cause injury to the health and sickness in the family of such person, and where the nuisance is continuing and likely to be permanent, and where the consequences are not barely possible, but to a reasonable degree certain, a court of equity may interpose to arrest such nuisance before completed. Code, §3002. Again, we have held that if a nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action, and as an action may be brought for every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction so as to do full and complete justice between the parties and terminate the litigation. *Georgia Chemical and Mining Company vs. Colquitt et al.*, 72 *Ga.*, 172; 18 *Ga.*, 528. More

especially will this be done when the party which seeks to create the nuisance is the only tribunal which has the power to abate the nuisance, as in this case. The nuisance is in the city of Thomasville, and it is this city, by its proper authorities, which has the power under the law to abate this nuisance, and yet it is the power which is perpetrating it. This case differs in this particular from *Powell vs. Foster*, 59 *Ga.*, 790. Here it is the municipal authorities which seek to create the nuisance. No one can be a judge in his own case. The damages likely to result to the plaintiff in error by reason of the nuisance are irreparable. See Wood's Law of Nuisances, sections 502, 512, 301, 684, 685, 686; Code, §§3000, 3210, 3219, and citations, which fully sustain the text.

2. There is no power or authority vested in the city of Thomasville authorizing it to enter upon or take the land of plaintiff for the purpose of digging or laying a sewer thereon, by its charter or other acts of the legislature. Acts of 1874, page 167. Nor is there any mode prescribed for the condemnation of such property for public use. Without express grant of such power, a municipal corporation cannot exercise it. Private property cannot be taken or damaged for public use without just and adequate compensation being first paid. Constitution of this state; Code, §§5024, 2225. The legislature may authorize the taking of private property, as provided by section 2222. If such authority be improperly granted, the courts shall declare it inoperative. Code, §2223. To justify the authority claimed by the city in this case, two things must concur: 1st. The necessity for the taking. 2d. Payment of just and adequate compensation before taking. The constitution and laws of this state guard with vigilance and jealousy the private rights and property of the citizen, and the courts of the state have ever extended their aid and assistance in the same direction, as will be seen by an examination of the following authorities: 1 Kelly, 524; 3

*Id.*, 31, 333; 6 *Ga.*, 130; 9 *Id.*, 37, 341; 14 *Id.*, 1; 19 *Id.*, 427; 37 *Id.*, 297; 33 *Id.*, 508; 42 *Id.*, 501; 33 *Id.*, 625.

However much we are disinclined to interfere with the discretion of a chancellor in granting or refusing to grant an injunction, we feel constrained, under the facts set forth in this record, to reverse the decree refusing the injunction prayed for in this case, and to order an injunction to issue.

Judgment reversed.