**EAST–BIBB TWIGGS NEIGHBOR-
HOOD ASSOCIATION, et
al., Plaintiffs,**

**v.**

**MACON–BIBB PLANNING & ZONING
COMMISSION, et al., Defendants.**

**Civ. A. No. 87–87–3–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

June 19, 1987.

Lonzy Edwards, Macon, Ga., for plaintiffs.

O. Hale Almand, Jr., Tim D. Hemingway, Macon, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Plaintiffs have filed this 42 U.S.C. § 1983 suit in this court seeking to enjoin the Macon-Bibb County Planning & Zoning Commission's action of granting a conditional use to Mullis Tree Service, Inc. The zoning commission had granted Mullis Tree Service, Inc. permission to operate a sanitary landfill in the plaintiffs' neighborhood. In addition to their claim for injunctive relief, plaintiffs further seek monetary damages for the allegedly illegal conduct of the Macon-Bibb County Planning & Zoning Commission in granting this conditional use. Plaintiffs' complaint, liberally construed, alleges that defendants' conduct entitles them to relief in this court for the following reasons:

(1) Defendants' conduct did not afford plaintiffs their procedural due process rights under the applicable zoning regulations;

(2) Defendants' decision denied plaintiffs substantive due process because it was totally unnecessary and bears no substantial relation to the public's health, safety, morality, and general welfare;

(3) Defendants' decision causes a "taking" which requires just compensation before it can be allowed; and

(4) Defendants' decision to locate the sanitary landfill in question near the plaintiffs' property was based upon the fact that the affected persons are poor and black.

Because discovery has been stayed by agreement of the parties until the court could resolve whether it had jurisdiction over the matters raised in plaintiffs' complaint, the court must assume, for purposes of its order today, that plaintiffs can produce some evidence supporting the allegations they have made. With that in mind, the court must address each of the claims raised by plaintiffs.

### Factual Background

On May 14, 1986, Mullis Tree Service, Inc. made application to the Macon-Bibb County Planning and Zoning Commission for a conditional use to operate a waste landfill in Bibb County, Georgia. The tract of land sought for the landfill was zoned "A" or Agricultural. Under the applicable zoning regulations, sanitary landfills are a permitted conditional use in such an area so long as the landfill complies with all laws, rules, and regulations of the city, county, state and federal government, and so long as a special zoning permit is granted by the zoning authority. (*See* Exhibit A, attached). After various hearings on the subject, the zoning commission granted a conditional use permit to Mullis Tree Service, Inc.

Following this decision, a number of property owners allegedly affected by the Board's decision filed a petition for certiorari, pursuant to § 27.15 of the zoning regulations, with the Superior Court of Bibb County, Georgia, raising various objections to the Board's action. That court subsequently dismissed the complaint for failure to name an indispensable party, Mullis Tree Service, Inc. These property owners then on May 2, 1987, filed an appeal with the Georgia Court of Appeals. That appeal is still pending at present. The parties to this action are allegedly not ones named in the pending state court action.

### Procedural Due Process

Plaintiffs raise a number of grounds supporting its contention that the Macon-Bibb County Planning & Zoning Commission failed to comply with its own regulations required to be complied with prior to the granting of the conditional use permit in question. Without reaching the issue of whether plaintiffs have a constitutional recognized property right in these regulations, assuming that they do, the court still cannot reach the merits of these allegations due to the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). *Williamson County* provides that a zoning board's decision is not ripe for review under a 42 U.S.C. § 1983 analysis until plaintiffs' can demonstrate that they have exhausted their state remedies, or that those remedies would be futile. In this case, however, the zoning regulations specifically provide that "Any person, firm, or corporation aggrieved by the decision of the commission shall have the right of certiorari as provided by law." It thus appears that any procedural requirements that were not followed by the commission are reviewable in state court. Before this court can hold that a deprivation of procedural due process has occurred, plaintiffs must demonstrate that the procedural safeguards set up by the zoning regulations themselves are futile or inadequate as a matter of law. No such evidence has been presented. While the plaintiffs do contend that they potentially can no longer bring such an action in state court because of the passage of time, their failure to bring the appropriate action constitutes a waiver of any rights that they might have otherwise had, and such a waiver would preclude review of their claims in this court. Plaintiffs also point to the defective complaint filed in the Bibb Superior Court, and assert that this effort demonstrates that they have at least attempted to exhaust state remedies. Their defective use of the appeal process again, however, is insufficient to demonstrate that the zoning regulations appeal process denied them procedural due process. Accordingly, plaintiffs procedural due process claims are either premature or waived by their failure to utilize the state

appeal process. Accordingly, the court hereby dismisses without prejudice plaintiffs' procedural due process claims so that they may pursue any rights under state law that they may still maintain in this area.

### Substantive Due Process

Plaintiffs' complaint also alleges a claim based upon the substantive due process clause of the Fifth and Fourteenth Amendments. Plaintiffs allege that the Board's decision granting a conditional use permit to Mullis Tree Service, Inc. was totally unnecessary and bears no substantial relation to the public health, safety, morality and general welfare. Plaintiffs, therefore, seek to have this court enjoin the board from allowing Mullis Tree Service, Inc. from going ahead with its sanitary landfill project.

■ The substantive due process doctrine proscribes "deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis." *See Anthony v. Franklin County*, 799 F.2d 681, 684 (11th Cir.1986). Economic and social legislation is presumed valid if it is rationally related to a legitimate state interest. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 4–9, 94 S.Ct. 1536, 1538–41, 39 L.Ed.2d 797 (1974) and *Anthony*, 799 F.2d at 684. Again, however, this court is constrained from reaching the merits of plaintiffs' claim because of the Supreme Court's ripeness requirement set out in *Williamson County*. The Supreme Court in *Williamson County* held that claims brought under the due process clause of the Fourteenth Amendment are similarly barred as being premature until state remedies are exhausted. As already noted in the procedural due process section, *supra*, the zoning regulations at issue specifically provide for any aggrieved party to file a complaint in the Superior Court of Bibb County. Before this court can rule that plaintiffs were denied substantive due process, they must first look to the state court remedy. If these appeal rights have been lost through inaction, so too have they lost their substantive due process claims under 42 U.S.C. § 1983. Accordingly, pursuant to *Williamson County*, the court hereby dismisses without prejudice plaintiffs' substantive due process claims because they are either premature or waived.

### Inverse Condemnation

■ Plaintiffs further claim that the decision of the Board granting a conditional use permit to Mullis Tree Service, Inc. constituted a taking "without substantive due process" in violation of the Fifth and Fourteenth Amendments. The Fifth Amendment to the United States Constitution provides, *inter alia*, "nor shall private property be taken for public use, without just compensation." As the Supreme Court pointed out in *Williamson County*, the Fifth Amendment does not proscribe the taking of property, rather it only proscribes taking without just compensation. 105 S.Ct. at 3121. So long as the state provides an adequate procedure for obtaining just compensation, the aggrieved landowner may not claim a denial of just compensation until he/she has exhausted the state procedures for compensation. *Id.* The nature of the constitutional right, therefore, requires that a property owner first utilize procedures under state law for obtaining compensation before he/she can bring a 1983 action. *Id.* at n. 13.

■ Plaintiffs contend that state law does not provide for an inverse condemnation procedure that would entitle them to compensation for the Board's zoning decision. While this court has already found that such a procedure does exist under Georgia law, *see Bernstein v. Holland*, 657 F.Supp. 233 (M.D.Ga.1987), the recent Supreme Court case of *First Evangelical Lutheran Church of Glendale v. County of Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), requires that the state recognize an inverse condemnation claim for money damages where a zoning regulation amounts to a taking. Plaintiffs' contentions are, therefore, meritless. Accordingly, plaintiffs' inverse condemnation claims are hereby DISMISSED without prejudice.

*Equal Protection*

Finally, plaintiffs have alleged that defendants' decision to grant a conditional use permit to Mullis Tree Service, Inc. was motivated by race. More specifically, plaintiffs' allegations appear to be that the zoning board conspired and has conspired in the past to locate undesirable land use activities in areas that are primarily inhabited by people who are poor and black. They contend that such a conspiracy violates the equal protection clause of the Constitution as made applicable to the states by way of the Fourteenth Amendment.

■ Assuming plaintiffs' allegations to be true, the court finds that plaintiffs have stated a cause of action under 42 U.S.C. § 1983 with respect to their equal protection claims. The doctrine of ripeness, as stated in *Williamson County,* is not applicable in this instance because plaintiffs here are not seeking just compensation for the zoning board's decision, nor are they seeking to have their procedural or substantive due process claims vindicated. Rather, they seek money damages for defendants' interference with their property rights through an illegal conspiracy motivated by race. Under these circumstances, plaintiffs cannot be required to seek redress under the zoning regulations of this state because they are not attacking the propriety of these regulations. Regardless of whether the zoning decision is arbitrary or capricious or whether they are entitled to compensation under state law, plaintiffs claim damages for an illegal conspiratorial action designed to violate a property owner's constitutional right. Such a cause of action exists independent of any rights that they might have for damages resulting from the regulations passed by the zoning board. *See generally Obendorf v. City and County of Denver,* 653 F.Supp. 304 (D.Colo.1986). With respect to their equal protection claims, this court is not aware of any state remedies that might lead this court to believe that this cause of action is not "ripe" for review. Accordingly, the court finds that plaintiffs' equal protection claims are subject to the jurisdiction of the court and are properly before it.

*Abstention*

■ There is a suggestion made by the defendants that abstention would be appropriate in this case due to the pending state action. Plaintiffs' equal protection claims are not before that court, and even if they were, this court sees no compelling need to declare abstention on these claims. Defendants' motion for abstention is, therefore, DENIED.

In conclusion, plaintiffs' substantive due process, procedural due process, and inverse condemnation claims are hereby DISMISSED without prejudice, and defendants' motions to dismiss plaintiffs' equal protection claims are hereby DENIED.

SO ORDERED.

EXHIBIT A

MACON–BIBB LAND
DEVELOPMENT RESOLUTION

ZONING ADMINISTRATION

**Section 27.06. Application for and granting of certificate of zoning compliance.**

For all land uses designated in this resolution as "permitted uses" or for structural alterations to a permitted use, a certificate of zoning compliance must first be obtained. The following procedures govern the granting of the certificate of zoning compliance:

[1] Application for a certificate of zoning compliance shall be made to the zoning enforcement officer. The application shall conform to the provisions set out in Section 27.07[1](b)

[2] If, after review of the application, the zoning enforcement officer determines that the proposed use or structural change complies with all of the provisions of law and of this resolution, he shall issue the certificate.

[3] Such certificate shall be conspicuously posted and displayed on the premises described on the permit during the period of construction.

[4] The zoning enforcement officer may require an applicant to provide satisfactory proof of compliance with the laws and regulations of various state, city, and county agencies including, but not limited to, the Environmental Protection Division of the Georgia Department of Natural Resources, Macon-Bibb County Fire Department, Macon-Bibb County Health Department, and the respective engineering departments of the City of Macon and County of Bibb.

[5] The zoning enforcement officer may impose such reasonable conditions upon any granting of a certificate of zoning compliance as he may determine to be required to protect adjacent properties or the general neighborhood from any harmful effects of the permitted use. A right of appeal to the commission shall exist from any such determination by the zoning enforcement officer. (See Section 27.14.)

[6] If the proposed land use is located in a flood hazard district, application for a floodplain development permit shall be made to the zoning enforcement officer. The application shall conform to the provisions of Section 5.16. (Amended May 14, 1984, ZA84–05–01)

**Section 27.07. Application for and granting of special zoning permits.**

A special zoning permit is required for all "conditional uses," for all uses of land or building, construction, modification or alteration of a building requiring commission approval and for variances or the granting of other permitted exceptions to the terms of this resolution by the commission.

[1] *Procedure for obtaining special zoning permit:*

(a) Applications shall be submitted to the zoning enforcement officer, by 12:00 noon, twelve (12) days prior to the public hearing at which it is to be considered. The zoning enforcement officer, after review of the application for compliance with the application procedures, will give public notice as required herein and will forward the application to the commission for public hearing. (The twelve-day requirement shall apply only to applications requiring commission approval). If proposed land use is located in flood hazard district, the application shall be accompanied by an application for a floodplain development permit conforming to the provisions of Section 5.16. (Amended May 14, 1984, ZA84–05–01)

(b) An application shall be accompanied by an acceptable site plan with such reasonable information shown thereon as may be required by the zoning enforcement officer or the commission. Such site plan shall include at a minimum the following: a sketch illustrating the property lines and dimensions, location and size of existing and proposed structures or monuments, use of structures, easements (private and public), water courses, fences, parking areas where applicable, street names and street right-of-way lines shown thereon, and such other information regarding abutting property as directly affects the application. The zoning enforcement officer or the commission may require the applicant to submit additional information.

(c) Each applicant for a special zoning permit listed in Section 27.09 shall submit with the application a list of all property owners within two hundred (200) feet of the property for which the permit is sought as shown on the county tax records and/or as is known by the applicant.

(d) An application concerning any of the following land uses must be accompanied by written approval of the Macon-Bibb County Health Department. However, the zoning enforcement officer may submit the application to the commission for land use approval only. In such case, the special zoning permit shall not be issued until the written approval of the Macon-Bibb County Health Department is received.

(i) Motels, mobile home and travel trailer parks, and tourist courts.

(ii) Carnivals, fairs, itinerant▮ meetings, and tent meetings.

(iii) Food service establishments such as restaurants, cafes, drive-in restaurants, grills, bars, taverns, night clubs, lunch counters and all similar dining and/or drinking establishments.

(iv) Frozen dessert and milk processing plants.

(v) Retail food establishments such as groceries, meat markets, drive-ins, etc.

(vi) Dairy farms.

(vii) Schools and other institutions such as nursing homes, hospitals, etc.

(viii) Stables and other animal housing.

(ix) Any use of radioactive material, or hazardous waste.

(x) Ice plants.

(xi) Bedding manufacturers or renovators.

(xii) Public swimming and recreation areas.

(xiii) Fall-out shelters.

(e) An application for storage of explosives, ammunition, blasting agents, and above- or belowground storage of flammable or combustible products must be accompanied by written approval of the Macon-Bibb County Fire Department. However, if the zoning enforcement officer deems it impractical to require such approval prior to commission action on the application, he may submit the application to the commission for land use approval. The special zoning permit shall not be issued until the written approval of the Macon-Bibb County Fire Department is received. (Amended July 22, 1985, ZA85–07–03)

(f) Applications for day care centers, day care homes, kindergartens, or playschools must contain the following: conditional approval from the Macon-Bibb County Health Department, the Macon-Bibb County Fire Prevention Bureau, the Bibb County Department of Family and Children Services, and day care licensing shall accompany the application for a special zoning permit.

(g) The applicant for a conditional use shall have the burden of proof in going forward with the evidence and burden of persuasion on all questions of fact relevant to the application.

(h) Incomplete applications will be held until all information is supplied.

[2] *Public hearing.* The commission shall conduct a public hearing on all applications for special zoning permits, except for those permits to be granted by the zoning enforcement officer pursuant to Section 27.04.

[3] *Action by the commission.* The commission shall approve or disapprove the application, or defer same in accordance with the provisions of Section 27.12[10].

[4] *Conditions upon approval.* The commission may make the granting of any special zoning permit conditional upon such conditions, restrictions, stipulations, or safeguards as it may deem appropriate to carry out the purpose and intent of this resolution and to protect adjacent properties, the general neighborhood, and the residents, workers, and visitors therein.

[5] *Denied permits.* Whenever the commission has denied an application for a special use permit, it shall not thereafter consider any further application for the same special use permit of any part or all of the same property for a period of twelve (12) months from the date of final denial of the application. (Amended October 25, 1982, ZA82–10–01)

[6] *Floodplain development permits.* Should the commission approve and grant a special zoning permit in a flood hazard district, the zoning enforcement officer, where appropriate, shall issue a floodplain development permit in accordance with Section 5.16. (Amended May 14, 1984, ZA84–05–01)

**Section 27.08. Compliance with application.**

Approval of applications for a certificate of zoning compliance or a special zoning

permit shall be based on the application. All supportive documentation including, but not limited to, site plans, drainage plans, and statements of intent shall be considered a part of the application and any amendments thereto. Representations, written or oral, of applicant to the commission at the hearing on the application, or where applicable to the zoning enforcement officer, shall become part of the application. Any use or development of land or any construction, erection, alteration or modification of a building or structure must conform to the application and any amendments thereto. Any amendment to the application must receive prior approval of the zoning enforcement officer. Any use or development of land or any construction, erection, alteration, or modification of a building or structure which is different from that contained in the application, to include any representations, written or oral, or any amendments properly allowed by the commission, shall be a violation and shall subject the applicant to any and all penalties which may be provided in Section 33.01 of this resolution.

### Section 27.09. Notice requirements for special zoning permits.

Written notice shall be given on the requests for special zoning permits listed below and shall be sent to all property owners within two hundred (200) feet of the property for which the permit is requested. The notice shall contain the nature of the proposed use and the date and location of the public hearing.

[1] Single-family attached and multi-family developments.

[2] Vocational schools.

[3] Shopping centers.

[4] Recreational areas.

[5] *Reserved.* (Deleted October 28, 1985, ZA85–10–02)

[6] Playschools, kindergartens, and day care centers and homes.

[7] Group personal care■ homes and supportive living homes.

### Section 27.10. Land use only approval.

The commission may grant approval for "land use only" if it determines a more detailed site plan than required by Section 27.07[1](b) is necessary prior to issuing a certificate of zoning compliance or a special zoning permit. Such "land use only" approval shall automatically expire twelve (12) months from the date of issuance if the required site plan has not been submitted within the time limit. In cases of hardship, the zoning enforcement officer may grant one (1) extension not to exceed six (6) months.

### Section 27.11. Variances.

[1] The commission is hereby authorized to grant variances from the strict application of this resolution upon proof by a preponderance of the evidence that:

(a) By reason of exceptional narrowness, shallowness, shape, topographical conditions, or other extraordinary situations or conditions peculiar to a specific parcel of property, the strict application of these regulations would result in peculiar or unusual, practical, difficulties to or exceptional or undue hardship upon the owner of such property;

(b) Such variance is the minimum reasonably necessary to overcome the aforesaid exceptional conditions;

(c) Such variance can be granted without substantial impairment to the intent, purpose, and integrity of this resolution and/or the comprehensive plan or other master plan adopted for the property; and

(d) Such variance will not be detrimental to the use and enjoyment of adjoining or neighboring properties. These provisions, however, shall not permit the commission to grant any variance to any setback or yard requirements for property zoned for commercial or industrial purposes when such property abuts or immediately adjoins any property zoned for residential purposes unless such residential property is proposed for commercial or industrial use

on the comprehensive land development plan.

[2] Variances cannot be granted for use of land or structures not permitted or prohibited, or to increase the density of development for a tract of land beyond that permitted by the zoning district.

[3] If the hardship invoking the provisions of this section was the result of the applicant's intentional disregard or willful failure to comply with the terms of this resolution, the commission may refuse to grant a variance.

[4] A variance(s) cannot be granted to cure a violation of this resolution unless and until the commission finds as a fact that:

(a) The violation cannot be reasonably remedied by any other means;

(b) The act creating the violation was not deliberate, intentional, or the result of gross negligence;

(c) Such variance can be granted without substantial impairment to the intent and purpose of this resolution and will not be detrimental to the use and enjoyment of adjoining or neighboring properties; and

(d) The violator has not previously requested and been granted a variance under the provisions of this subsection, except that this provision shall not apply if the violator can establish that such previous violation was the result of an accident or other excusable cause.

## Section 27.12. Public hearings.

On all matters requiring a public hearing by the commission such hearing shall be conducted in accordance with the following procedures:

[1] All hearings shall be open to the public. The chairman, or his designee in the chairman's absence, shall preside.

[2] The commission may adjourn a regular meeting if all business cannot be disposed of on the day set, and no further public notice shall be necessary for such a meeting if the time and place of its resumption is stated at the time of adjournment and is not changed after adjournment.

[3] The applicant shall appear at the public hearing or be represented by an agent, attorney, or any other party on the applicant's behalf.

[4] Adherence to the rules of evidence of a trial at law shall not be required. The chairman of the commission may allow such latitude on the receipt of evidence as rules of fair play may require; however, the chairman may limit the presentation of repetitive evidence.

[5] All hearings shall proceed as follows:

(a) Statement by commission representative explaining the nature of the action to be taken;

(b) Oral presentation of staff report, if requested by any commissioner; (Amended October 8, 1984, ZA84–10–01)

(c) Presentation by applicant;

(d) Presentation of other interested parties, first in support of application, then in opposition to application; and

(e) Rebuttal by applicant and then by opposition.

[6] Witnesses may be called by either side of the proposition being considered by the commission or by the commission itself.

[7] The commission may request the staff or commission attorney to make a presentation to ensure a complete record upon which the decision must be based.

[8] The chairman may establish appropriate time limits for arguments, but such time limits shall be equal for both sides. The chairman may request representatives of each side to speak for the entire group or portions of the group but shall not require such representation against the wishes of the group involved.

[9] An applicant may request a continuance of any hearing to present additional information.

[10] The commission will render its decision at the end of the session unless a

decision on the matter is deferred for a good reason. Any such deferral shall not exceed sixty (60) days, or the third hearing thereafter, whichever is longer.

### Section 27.13. Rehearing.

Any person, firm, or corporation whose application has been previously and finally disapproved may, within thirty (30) days from the date of final disapproval, move for a rehearing by the commission. All motions for a rehearing by the commission shall be written, and no hearing on the motion shall be had. No motion for rehearing shall be considered unless new or additional information is to be submitted by the applicant that was not available at the time of the original hearing or was not presented for excusable neglect. A denial of this motion is a final action. The granting of such motion will require a new hearing.

### Section 27.14. Appeals from acts or decisions of zoning enforcement officer.

Any person, firm or corporation aggrieved by any decision or act of the zoning enforcement officer in the administration of this resolution may file an appeal in writing with the commission within thirty (30) days of the act or decision being appealed. The commission may, after a hearing, affirm or reverse, wholly or in part, or may modify the order, requirements, decisions, or determination of the zoning enforcement officer. The procedure for hearing appeals from the decisions or acts of the zoning enforcement officer shall be the same as set out in Section 27.12, "Public Hearings."

### Section 27.15. Appeals from decisions of commission.

Any person, firm, or corporation aggrieved by a decision of the commission shall have the right of certiorari as provided by law.

### Section 27.16. Certificate of occupancy required.

A certificate of occupancy shall be required for: (a) occupancy and use of a building constructed, enlarged, relocated, reconstructed, or altered; or, (b) a change in the use of an existing building; or, (c) occupancy and use of land or change in the use of land except to any use which is primarily agricultural. A change in use shall include any change to a use first permitted in another district. However, any normal replacement or addition of equipment and machinery not affecting the foregoing conditions or not changing the degree or nature of dangerous or objectionable elements emitted shall not be considered a change in use. No occupancy, use, or change of use shall be undertaken until a certificate of occupancy therefor ▪ has been issued, and no such certificate shall be issued unless the proposed occupancy is in full conformity with the resolution. Additionally, no certificate of occupancy shall be issued unless the construction, development, or use conforms to the application submitted to obtain either the certificate of zoning compliance or special zoning permit, and no certificate of occupancy shall be issued unless all special conditions or requirements imposed on or required by either the zoning enforcement officer or commission at the time of issuance of the certificate of zoning compliance or special zoning permit have been met.

[1] Within ten (10) days of the date of proposed occupancy or use of any premises for which a certificate of zoning compliance or special zoning permit was obtained, the zoning enforcement officer will be notified that the premises are ready for use or occupancy. The zoning enforcement officer will cause an inspection of the premises to be made, and, if found to be in conformity with the provisions of this resolution, will issue a certificate of occupancy.

[2] Failure to obtain a certificate of occupancy prior to use or occupancy of any premises requiring such certificate shall constitute a violation of this resolution.